Affirmed and Memorandum Opinion
filed December 14, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00937-CR



Arrington Perry, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 248th District Court

Harris County, Texas

Trial Court
Cause No. 1196641



 

MEMORANDUM OPINION 

A jury convicted appellant Arrington Perry of
aggravated robbery and assessed punishment at twenty-two years’ confinement in
the Texas Department of Criminal Justice, Institutional Division and a $2,000 fine. 
In two issues, appellant challenges the legal and factual sufficiency of the
evidence supporting his conviction.  We affirm.

Factual and Procedural Background

At 6:50 a.m., on December 22, 2008, Sarah Long, the
complainant, was returning to her apartment from the gym.  Long parked her car,
got out with her purse and some shopping bags, and walked to the gate.  The
apartment complex was gated and required a code to enter.  The code box was
malfunctioning and Long entered the code several times trying to open the
gate.  While Long was standing at the gate, she noticed a male, wearing all
black, walking on the street toward her.  She turned around to see who it was, and
appellant was standing about a foot behind her holding a gun in his left hand.  Twice
he ordered Long to give him her purse, but she refused each time.  Appellant grabbed
the strap of her purse and tried to pull it from her, but she hooked her arm,
preventing him from taking it.  Long and appellant struggled over the purse,
and Long started screaming to attract attention.  

Appellant struck the back of Long’s hands with the
butt of the gun trying to get her to let go of the purse.  Long eventually let
go, and appellant ran away with her purse.  Long followed appellant and saw him
get into the passenger side of a car that was waiting on the street.  Long
caught up to appellant and grabbed the back of his coat trying to pull him out
of the car.  She was able to grab the hat off appellant’s head and left it in
the street.  Long was able to get the license plate number of the vehicle and
memorized it by repeating it out loud.  A neighbor who had heard the struggle
wrote it down for her, and Long called the police.  

She described the suspect to Officer Scott of the
Houston Police Department (“HPD”) as a black male, in his early to
mid-twenties, about five feet seven inches to six feet tall, 150 to 160 pounds,
medium brown skin, with his hair in cornrows, and wearing a black coat and
black pants.  Long gave the license plate number of the vehicle and the hat she
had pulled off of appellant’s head to the police.  Officer Scott entered the
license plate number into a database.  The vehicle was a Chevrolet Malibu
registered to appellant’s grandmother on Bostic.  

Officer Duncan and his partner went to the address on
Bostic in an unmarked vehicle, but did not see the car there.  They left and
returned about ten minutes later and saw the car backed into the driveway. 
About four or five minutes later, they saw appellant leave in the vehicle and followed
him.  When appellant pulled into a driveway, Officer Duncan and his partner,
who were in full uniform, approached appellant with their weapons drawn. 
Appellant put the car in reverse, backed up, and drove away.  They followed
appellant, and marked units, with lights and sirens on, joined the pursuit. 
Appellant ran a stop sign and hit a pickup truck, but continued driving and
returned to the house on Bostic.  Appellant drove up the driveway behind the
house, and struck the house and a chain-link fence.  Appellant rammed the fence
several times trying to drive through it, and the vehicle became lodged between
the fence and the house.  After several minutes, the police removed appellant
from the car.  

Officer Gray, who is a K-9 handler with HPD, arrived
at the scene on Bostic with his canine partner Rocket.  After searching the
house for other suspects, Officer Gray was walking Rocket back to the car when Rocket
identified some type of human odor underneath the house.  Rocket pulled Officer
Gray along the side of house and tried to crawl under the house.  Officer Gray
allowed Rocket to go under the house where he found Long’s purse.  A revolver
was also found underneath the house next to the purse which Long identified as the
same type, color, and size as the gun used during the robbery.  It was “very
much the gun that he used . . . to strike [her].”  

Appellant was transported to the hospital.  Later
that day, Long went to the hospital where appellant was presented to her for
identification.  Long “could not make a 100 percent positive ID” because it was
still dark when the incident happened, and she “was panicking and was focused
on the weapon.”  However, appellant looked similar to the assailant and had the
same characteristics Long had described to the police.  The cap Long had
grabbed off of appellant’s head was submitted for DNA testing at the HPD Crime
Lab.  DNA analysis indicated that appellant’s DNA was on the cap.  

The jury found appellant guilty of aggravated robbery
and assessed punishment at twenty-two years’ imprisonment and a $2,000 fine. 
This appeal followed.  

 

 

Sufficiency of the Evidence

In his first and second issues, appellant argues that
the evidence is legally and factually insufficient to support his conviction
because Long was unable to positively identify him as the assailant.  While
this appeal was pending, the Court of Criminal Appeals held that only one
standard should be used to evaluate the sufficiency of the evidence in a
criminal case: legal sufficiency.  Brooks v. State, No. PD-0210-09, —
S.W.3d —, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010) (plurality
opinion); id. at *22 (Cochran, J., concurring).  Accordingly, we review
the sufficiency of the evidence in this case under a rigorous and proper
application of the Jackson v. Virginia, 443 U.S. 307 (1979), legal
sufficiency standard.  Brooks, 2010 WL 3894613, at *11 (plurality
opinion).  

When reviewing the sufficiency of the evidence, we
view all of the evidence in the light most favorable to the verdict to
determine whether the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Id. at 5; Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  This court does not sit as a thirteenth juror and
may not substitute its judgment for that of the fact finder by re-evaluating
the weight and credibility of the evidence.  Brooks, 2010 WL 3894613, at
*7; Williams, 235 S.W.3d at 750.  We defer to the fact finder’s
resolution of conflicting evidence unless the resolution is not rational.  Brooks,
2010 WL 3894613, at *7 n.8, *11.  Our duty as a reviewing court is to ensure
that the evidence presented actually supports a conclusion that the defendant
committed the crime.  Williams, 235 S.W.3d at 750.  

A person commits the offense of robbery if, in the
course of committing theft and with intent to obtain or maintain control of the
property, he (1) intentionally, knowingly, or recklessly causes bodily injury
to another, or (2) intentionally or knowingly threatens or places another in
fear of imminent bodily injury or death.  Tex.
Penal Code Ann. § 29.02(a)(2) (West 2003).  A robbery is aggravated if
the person uses or exhibits a deadly weapon in the course of committing the
robbery.  Id. § 29.03(a)(2) (West 2003).  A firearm is a deadly weapon per
se.  Id. § 1.07(a)(17)(A) (West Supp. 2009); Ex parte Huskins,
176 S.W.3d 818, 820 (Tex. Crim. App. 2005).  

When Long saw appellant at the hospital, she “could
not make a 100 percent positive ID” of appellant.  However, “positive”
eye-witness testimony is not necessary to determine appellant’s identity.  See
Earls v. State, 707 S.W.2d 82, 85 (Tex. Crim App. 1986) (“Evidence as to
the identity of the perpetrator of an offense can be proved by direct or
circumstantial evidence.”); Roberson v. State, 16 S.W.3d 156, 167 (Tex.
App.—Austin 2000, pet. ref’d) (“[I]dentity may be proven by inferences.”).  Appellant
had the same characteristics Long had given the police, including the same
build, height, hairstyle, and complexion.  The car appellant was riding in at
the time of the robbery was registered to appellant’s grandmother.  Officer
Duncan saw appellant leave his grandmother’s house in the car approximately one
hour after the robbery.  Appellant fled from the police and did not stop after
he had collided with another vehicle.  Flight from the police is a circumstance
from which an inference of guilt may be drawn.  See Foster v. State, 779
S.W.2d 845, 859 (Tex. Crim. App. 1989) (“Evidence of flight is admissible as a
circumstance from which an inference of guilt may be drawn. . . . Flight is no
less relevant if it is only flight from custody or to avoid arrest.”).  Appellant
only stopped after the car became lodged between the house and a fence.  Officer
Gray and Rocket found Long’s purse and the gun that Long identified as the one
used in the robbery under the house.  The cap that Long grabbed from
appellant’s head contained his DNA.  Circumstantial evidence alone can be
sufficient to establish guilt.  Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007).  We conclude the circumstantial evidence presented here is legally
sufficient to support appellant’s conviction for aggravated robbery and, accordingly,
overrule appellant’s first and second issues.  




 

Having overruled both issues, we affirm the trial
court’s judgment.

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Yates and Price.[1]

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
Senior Justice Frank C. Price sitting by assignment.